

**FILED**

JUN 2 2 2023

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

Clerk, U. S. District Court
Eastern District of Tennessee
At Greeneville

IN RE THE SEARCH OF CELLULAR TELEPHONES )
SEIZED DURING THE SEARCH OF A RESIDENCE )
LOCATED AT 249 LISA LANE, PINEY FLATS, )
TENNESSEE 37686 )
)

Case No. 2:23-MJ-129

TO BE SEALED

## AFFIDAVIT IN SUPPORT OF

## AN APPLICATION FOR A SEARCH WARRANT

I, Homeland Security Investigations Special Agent John Bulla, being first

duly sworn, hereby depose and state as follows:

### PURPOSE OF THE AFFIDAVIT

1.     I make this affidavit in support of an application to search the Cellular

Phones identified on Attachment A that were seized in connection with a search warrant

lawfully issued by this Court and executed on May 25, 2023, on the premises of 249 Lisa

Lane, Piney Flats, TN 37686, filed as 2:23-MJ-108. I make this Affidavit to search the items

described on Attachment A which are currently in law enforcement possession, and the

extraction from that property of electronically stored information described in Attachment

B.

2.     The Original Attachment B in Search Warrant 2:23-MJ-108 authorized law

enforcement officials to seize:"… telephone records indicating telephone

communications to coconspirators, drug customers and drug suppliers; address

books, telephone books, computerized records and papers reflecting names,

addresses and telephone numbers of drug customers and suppliers; cellular

1

phones and electronic devices used to facilitate the distribution of controlled substances (the data within cellular phones is not to be searched without consent or subsequent search warrant)..."

## PROBABLE CAUSE

The Probable Cause provided in the Original Search Warrant, are now restated below:

3.    The United States, HSI, and the Johnson City Police Department (JCPD) Special Investigation Squad (SIS) are conducting a criminal investigation of Ambrosio CORTES ROSALES (AKA "Minion") and others regarding drug trafficking and conspiracy to traffic drugs (namely cocaine) in violation of 21 U.S.C. § 841 and 21 U.S.C. § 846 and possession of a firearm in furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924(c).

4.    This investigation has revealed that Ambrosio CORTES ROSALES is obtaining kilogram quantities of cocaine and distributing the cocaine in the Eastern District of Tennessee.

5.    On February 23, 2023, Investigator Kirt Stillwagon of the JCPD SIS interviewed a confidential informant (CI). The CI stated he/she had been purchasing an ounce of cocaine for $1200 once per week for approximately one year from a Hispanic male the CI knew only as "Minion". The CI further stated the drug transactions were always arranged through the messaging application Snapchat. According to the CI, "Minion" usually arranged for the CI to meet him/her in the Piney Flats, Tennessee area, and "Minion" usually arrived in a black Dodge truck, a black Cadillac SUV, or a blue Chevrolet Silverado.

6.    The CI agreed to assist investigators and make purchases of cocaine from "Minion." Prior to any purchase of cocaine made by the CI at the direction of investigators,

2

the CI met investigators at a predetermined location. After the CI arrived at the predetermined location, the CI and the CI's vehicle were searched for contraband, the CI was given prerecorded U.S. currency, the CI was equipped with an electronic monitoring device, and the CI was given a predetermined location to meet investigators after the drug transaction took place. Investigators then followed the CI to wherever "Minion" informed the CI to meet. After each drug transaction the CI made, investigators followed the CI back to a predetermined location. The CI then provided investigators with the purchased cocaine. Investigators then searched the CI and the CI's vehicle for any additional contraband or prerecorded currency, retrieved the electronic monitoring device, and debriefed the CI prior to the CI leaving.

7.     On February 23, 2023, while acting under the direction of law enforcement, the CI contacted "Minion" via Snapchat to arrange the purchase of an ounce of cocaine for $1200. "Minion" agreed and arranged the meeting location at McDonald's in Piney Flats, Tennessee. Investigators followed the CI to the meeting location. While enroute to the meeting location, investigators conducting surveillance in the area observed a police presence at a nearby business. Investigators also observed a newer model black Dodge pickup arrive at the meeting location. "Minion" informed the CI there was a large "piggy" presence and to follow him when the CI arrived.

8.     Once the CI arrived at the meeting location, the CI then followed "Minion," who was operating the black Dodge pickup, to a nearby apartment complex. While following the Dodge pickup, the CI provided investigators a Tennessee vehicle registration of "BH94740" for the Dodge pickup. Once the CI and "Minion" arrived at the apartment complex, "Minion" sold the CI approximately one ounce of cocaine for $1200. The CI stated

3

the transaction took place through the driver's side window of the Dodge pickup, and the CI observed a Hispanic female in the passenger's seat.

9.     Investigators then began researching the vehicle registration information provided by the CI. Based on the current format for Tennessee vehicle registrations, investigators knew the "9" in "BH94740" had to be a letter instead of a number. Investigators were able to locate Tennessee vehicle registration BHN4740 and determined it to be registered to a 2019 black Dodge Ram pickup belonging to Oralia CORTES ROSALES and Ambrosio CORTES ROSALES of the TARGET RESIDENCE. Investigator Stillwagon provided the CI with a photograph of Ambrosio CORTES ROSALES, and the CI positively identified Ambrosio CORTES ROSALES as the individual the CI knew as "Minion."

10.     In an open internet search, Apartments.com displays the TARGET RESIDENCE as a rental property. On May 17, 2023, Investigator Stillwagon spoke with a Johnson City, Tennessee utilities employee regarding the account owner of the TARGET RESIDENCE. According to the employee the account is currently in the name of Oralia Cortes. On May 24, 2023, I confirmed that in September 2020, Oralia CORTES ROSALES filed a petition for an Alien Relative status for Ambrosio CORTES ROSALES. On the petition Oralia CORTES ROSALES lists Ambrosio CORTES ROSALES as her spouse. Based on surveillance, vehicle registration and utility account information, I believe that Oralia CORTES ROSALES and Ambrosio CORTES ROSALES live at the TARGET RESIDENCE together.

11.     On March 8, 2023, while acting under the direction of law enforcement, the CI contacted "Minion" via Snapchat to arrange the purchase of an ounce of cocaine for

4

$1200. "Minion" agreed and arranged the meeting location as a Big Valley Mobile Home Park in Johnson City, Tennessee.

12.  Investigator Cutshall of the JCPD SIS conducted surveillance of the TARGET RESIDENCE prior to the CI meeting "Minion." Investigator Cutshall observed a black Dodge truck, a black Cadillac SUV, and a blue Chevrolet Silverado at the TARGET RESIDENCE. These vehicles matched the three vehicles the CI previously provided as vehicles "Minion" frequently operated to meet the CI. At approximately 09:06 p.m., Investigator Cutshall observed the black Cadillac SUV leave the TARGET RESIDENCE. According to a GOOGLE search, the TARGET RESIDENCE is located approximately ten minutes (6.3 miles) from Big Valley Mobile Home Park.

13.  Investigators followed the CI to Big Valley Mobile Home Park. The CI arrived at approximately 09:20 p.m., and "Minion" was waiting in the black Cadillac SUV. "Minion" sold the CI approximately one ounce of cocaine for $1200 from inside of the black Cadillac SUV. The CI stated there was not anyone else inside of the Cadillac SUV with "Minion."

14.  After the drug transaction took place, investigators were able to obtain a Tennessee vehicle registration of 807BCLN for the black Cadillac SUV. Investigators determined the vehicle was registered to Ambrosio CORTES ROSALES.

15.  On March 24, 2023, while acting under the direction of law enforcement, the CI contacted "Minion" via Snapchat to arrange the purchase of an ounce of cocaine for $1200. "Minion" agreed and informed the CI to meet at the Johnson City Mall in Johnson City, TN. Once the CI arrived at the Johnson City Mall, "Minion" informed the CI to meet at the McDonald's in front of the Johnson City Mall. The CI met "Minion" and purchased approximately an ounce of cocaine for $1200. "Minion" was operating the black Cadillac SUV and was by himself.

5

16.     On April 13, 2023, while acting under the direction of law enforcement, the CI contacted "Minion" via Snapchat to arrange the purchase of one ounce of cocaine for $1200. "Minion" agreed and arranged the meeting location as Food City in Piney Flats, Tennessee.

17.     Investigator Cutshall conducted surveillance of the TARGET RESIDENCE prior to the CI meeting "Minion." At approximately 12:47 p.m., Investigator Cutshall observed a Hispanic female standing in the carport of the TARGET RESIDENCE. Shortly after, Investigator Cutshall observed a black Dodge Ram pickup leave the TARGET RESIDENCE. According to a GOOGLE search, the TARGET RESIDENCE is approximately four minutes (1.1 miles) from Food City in Piney Flats, Tennessee.

18.     The CI arrived at the Food City in Piney Flats, Tennessee at approximately 01:00 p.m. "Minion" was already at the Food City when the CI arrived and was waiting in the black Dodge Ram pickup. The CI met "Minion" and purchased approximately an ounce of cocaine for $1200. During the transaction, "Minion" was sitting in the driver's seat, and a Hispanic female was sitting in the passenger's seat.

19.     On April 25, 2023, the CI contacted Investigator Stillwagon. The CI advised he/she was contacted by "Minion." The CI stated "Minion" was wanting money due to "Minion" going out of town. Investigator Stillwagon asked the CI what money "Minion" was owed, and the CI stated the cocaine being obtained was being "fronted" and the money provided to "Minion" was for each previous transaction. This agreement between the CI and "Minion" began prior to the CI cooperating with investigators. Investigator Stillwagon informed the CI that "Minion" could be given $900 and to ask "Minion" about getting fronted an additional half ounce of cocaine.

6

20.     On April 25, 2023, while acting under the direction of law enforcement, the CI contacted "Minion" via Snapchat and arranged paying "Minion" $900 and obtaining an additional half ounce of cocaine. "Minion" agreed and arranged the meeting location as Big Valley Mobile Home Park in Johnson City, Tennessee at 09:00 p.m.

21.     Investigator Cutshall conducted surveillance of the TARGET RESIDENCE prior to the CI meeting "Minion." At approximately 09:00 p.m., Investigator Cutshall observed a black Dodge Ram pickup leave the TARGET RESIDENCE.

22.     The CI arrived at Big Valley Mobile Home Park at approximately 09:06 p.m. Shortly after, Investigator Stillwagon observed a black Dodge Ram enter the trailer park and pull behind the CI's vehicle. The vehicles then pulled further into the mobile home park. The CI then walked up to "Minion's" pickup and provided "Minion" with $900 and obtained approximately a half ounce of cocaine. "Minion" was in the driver's seat, and the same Hispanic female from previous drug transactions was sitting in the passenger's seat.

23.     On May 5, 2023, the CI contacted Investigator Stillwagon. The CI advised he/she was contacted by "Minion." The CI stated "Minion" was wanting the remaining $900 owed, and "Minion" would meet the CI at the CI's place of employment. While acting under the direction of law enforcement, the CI contacted "Minion" via Snapchat and arranged paying "Minion" the $900 owed to have an additional ounce of cocaine "fronted".

24.     Investigators met with the CI at the CI's place of employment. Upon arrival, investigators observed "Minion's" black Dodge Ram pickup parked in the parking lot. The CI met with "Minion" at the driver's side window of the pickup and provided "Minion" with $900. "Minion" provided the CI with approximately an ounce of cocaine. "Minion" was in the driver's seat, and the same Hispanic female from previous drug transactions was sitting in the passenger's seat.

7

25.     On May 12, 2023, investigators conducted surveillance of Ambrosio CORTES ROSALES (AKA "Minion"). Investigators had obtained a state order to place a tracking device on the black Dodge Ram pickup. Investigators were also attempting to identify CORTES ROSALES' patterns of behavior and co¬conspirators. During the surveillance, CORTES ROSALES met with several individuals at different locations. Based on the observations of investigators and my training and experience, it is believed the purpose of the meetings was to conduct drug transactions. The following is a synopsis of the observations of the investigators involved with the surveillance:

26.     04:34 p.m. – CORTES ROSALES was observed leaving the TARGET RESIDENCE in a white Ford pickup truck. CORTES ROSALES was then observed in the Food City parking lot on Bristol Highway in Piney Flats, TN. After CORTES ROSALES arrived, an unknown Hispanic male met CORTES ROSALES outside CORTES ROSALES' vehicle. As CORTES ROSALES exited his vehicle, a Hispanic female, believed to be Oralia CORTES ROSALES exited the same vehicle. Shortly after meeting, Ambrosio CORTES ROSALES and the unknown Hispanic male entered Ambrosio CORTES ROSALES' vehicle, leaving Oralia CORTES ROSALES outside of it. After a short amount of time, the unknown Hispanic male exited the vehicle, walked away, and entered a white Dodge Ram pickup. The white Dodge Ram pickup then exited the parking lot and traveled towards Johnson City, Tennessee. The Tennessee vehicle registration was registered to Victor JARAMILLO of 103 Harrison Street, Johnson City. 103 Harrison Street was part of a cocaine trafficking case in 2022 in which cocaine shipments were sent to the residence. Investigators continued surveillance of the Dodge Ram pickup until it arrived and pulled into an alleyway on Harrison Street in Johnson City, Tennessee. The driver of the Dodge Ram pickup was positively identified as Victor JARAMILLO.

8

27.     Ambrosio CORTES ROSALES returned to the TARGET RESIDENCE while investigators were conducting surveillance on JARAMILLO.

a.  06:15 p.m. - CORTES ROSALES was observed again departing the TARGET RESIDENCE in a black Dodge Ram. CORTES ROSALES went back to the Food City on Bristol Highway. CORTES ROSALES met an unknown Hispanic male in a red Ford F-150. CORTES ROSALES entered the F-150 and sat in the passenger seat. CORTES ROSALES then exited the vehicle after a few minutes and reentered the black Dodge Ram.

b.  06:27 p.m. – Ambrosio CORTES ROSALES arrived at the Dollar General located at 233 US-19E, Bluff City, Tennessee. CORTES ROSALES met with what appeared to be two males and possibly a female in a black Ford Escape with no license plate. One person entered CORTES ROSALES' vehicle and exited after a short amount of time. CORTES ROSALES then left.

c.  06:32 p.m. - CORTES ROSALES arrived at the Bluff City Boat Landing Dock located at 4196 Bluff City Highway, Bluff City, Tennessee. CORTES ROSALES was observed meeting an unknown Hispanic male in a black Dodge Ram with a hood scoop. It appeared there was some type of exchange during the meeting, and CORTES ROSALES left.

d.  06:55 p.m.- CORTES ROSALES arrived at the Mad Greek Restaurant located at 2419 Volunteer Parkway, Bristol, Tennessee. CORTES ROSALES never left his vehicle, and it appeared he just sat there with headlights on. Investigators conducting surveillance could not see if CORTES ROSALES met anyone at the restaurant. CORTES ROSALES left and began driving towards Johnson City, TN.

9

e.  07:26 p.m. - CORTES ROSALES arrived at Food Lion located at 3120 Bristol Highway, Johnson City, TN. CORTES ROSALES met a Hispanic male in the parking lot. CORTES ROSALES left after meeting the unknown Hispanic male for a short amount of time.

f.  07:55 p.m.- CORTES ROSALES arrived at the Johnson City Mall, circled the parking lot, and departed across the street to the Books-A-Million parking lot located at 2116 North Roan Street, Johnson City, TN. CORTES ROSALES met an unknown individual.

g.  08:30 p.m. - CORTES ROSALES arrived at the TARGET RESIDENCE.

h.  09:00 p.m. – Ambrosio CORTES ROSALES and Oralia CORTES ROSALES departed the TARGET RESIDENCE in a black Cadillac SUV and traveled to the Sunoco located at 1001 South Roan Street, Johnson City, Tennessee. Ambrosio CORTES ROSALES met an unknown Hispanic male who was driving a gray Nissan Titan in the parking lot. The unknown Hispanic male entered the rear of the Cadillac SUV. After a short amount of time, the unknown Hispanic male exited and both vehicles left. Investigators then followed Ambrosio CORTES ROSALES back to the TARGET RESIDENCE.

i.  11:15 p.m. - Investigators terminated surveillance.

28.     On May 18, 2023, the CI contacted Investigator Stillwagon. The CI advised he/she was contacted by "Minion." The CI stated "Minion" was wanting the $1200 owed from the previous drug transaction on May 5, 2023. While acting under the direction of law enforcement, the CI contacted "Minion" via Snapchat and arranged paying "Minion" the $1200 owed and to have an additional ounce of cocaine "fronted". "Minion" agreed and

10

arranged the meeting location as 3915 Bristol Highway Johnson City, Tennessee at 01:30 p.m.

29.   Investigators conducted surveillance of the TARGET RESIDENCE and the agreed meeting location prior to the CI meeting "Minion." Investigators observed a black Cadillac SUV at the agreed meet location. The SUV was parked in front of Ponce Studio, a hair salon.

30.   The CI arrived at the agreed meet location and met with "Minion" at the driver's side window of the SUV and provided "Minion" with $1200. "Minion" provided the CI with approximately an ounce of cocaine. "Minion" was in the driver's seat, and the only occupant in the SUV. Investigators continued surveillance of "Minion" after the transaction took place and observed Oralia CORTES ROSALES exit Ponce Studio and enter the SUV.

31.   During the debrief of the CI, Investigator Stillwagon showed the CI two photographs. The first photograph was of Ambrosio CORTES ROSALES, and the CI immediately identified CORTES ROSALES as "Minion." The second photograph was of Oralia CORTES ROSALES, and the CI stated he/she believed Oralia CORTES ROSALES was the female who had been with Ambrosio CORTES ROSALES during several drug transactions.

32.   Investigator Stillwagon obtained a search warrant in the Criminal Court for Washington County, TN for information pertaining to the Snapchat account, "patitof3", Ambrosio CORTES ROSALES was utilizing to communicate with the CI. The return provided by Snapchat showed CORTES ROSALES provided a date of birth of 12/07/1989 and a phone number of 432-238-4683 to Snapchat. The date of birth matched CORTES ROSALES' date of birth used by CORTES ROSALES to obtain a Tennessee identification.

11

The phone number was identified to be linked to a Cash App account in the name of Ambrosio CORTES with a username of $Minios21394.

33.    While reviewing photographs provided by Snapchat for CORTES ROSALES' account, investigators located numerous photographs of suspected cocaine and firearms that had been uploaded to the Snapchat account.

     a.  On December 14, 2019, a photograph of a bolt action rifle, two semiautomatic pistols, and ammunition lying on a tabletop was uploaded to the Snapchat account.

     b.  On February 8, 2020, a photograph of two Ziploc style bags containing a hard-pressed substance with the appearance and characteristics of "bricks" of cocaine was uploaded to the Snapchat account.

     c.  On December 18, 2020, a photograph of a shotgun, a semiautomatic pistol, and ammunition lying on a gray blanket was uploaded to the Snapchat account.

     d.   On May 20, 2021, a photograph of a shotgun lying on a couch was uploaded to the Snapchat account.

     e.  On June 06, 2021, a photograph of a shotgun lying on a floor was uploaded to the Snapchat account.

     f.  On December 05, 2021, a photograph of a hard-pressed substance with the appearance and characteristics of a "brick" of cocaine sitting on a digital scale lying on a tabletop was uploaded to the Snapchat account. The digital scale was displaying 2.205 lb., and the tabletop appeared to be the same tabletop photographed with firearms on December 14, 2019.

12

g. On July 1, 2022, a photograph of two vacuum sealed bags of a hard-pressed substance with the appearance and characteristics of "bricks" of cocaine lying on a gray blanket was uploaded to the Snapchat account. The blanket appeared to be the same blanket in the photograph of the firearms taken on December 18, 2020.

h. On October 13, 2022, a photograph of a package with the appearance and shape that kilogram quantities of cocaine are usually transported was uploaded to the Snapchat account. The same table from the other mentioned photographs was also viewable in the photograph.

i. On October 15, 2022, a photograph of a hard-pressed substance with the appearance and characteristics of a "brick" of cocaine was uploaded to the Snapchat account.

j. On December 10, 2022, a photograph of a package with the appearance and shape that kilogram quantities of cocaine are usually transported was uploaded to the Snapchat account. The same table from the other mentioned photographs was also viewable in the photograph.

34. The cocaine obtained and observed in photographs throughout this investigation was identified as such based on my and other investigators involved in this investigation experience and training. The purchased cocaine has been sent to a crime lab for analysis and results are currently pending.

Probable Cause since Execution of the Search Warrant on May 25, 2023:

35. Based upon the provision in the Original Search Warrant's Attachment B, during the execution of the Original Search Warrant, law enforcement officials seized inter

13

alia, three cellular phones. Law enforcement also found and seized the following evidence during the execution of the Original Search Warrant; $85,958 U.S. currency, approximately seven pounds and nine and half ounces of suspected cocaine, approximately five pounds of marijuana, a Springfield Armory XD-9mm pistol with s/n US902955, a Ruger .22 pistol with s/n 381075397, various drug packaging, a digital scale, miscellaneous documents, and shrines commonly used by drug traffickers.

36.     As a result of the findings during the execution of the Original Search Warrant, Ambrosio CORTES ROSALES was placed under arrest and taken to the Sullivan County Sheriff's Office. Ambrosio CORTES ROSALES was advised of his Miranda Rights, and he signed a waiver of rights form. Ambrosio CORTES ROSALES admitted ownership to two of the seized cellular phones (Cellular Phones described in attachment A). Ambrosio CORTES ROSALES admitted to purchasing kilogram quantities of cocaine for $20,000 USD per kilogram, but Ambrosio CORTES ROSALES was not forthcoming with information on how he obtained and/or distributed the cocaine.

37.     Ambrosio CORTES ROSALES' wife, Oralia CORTES ROSALES, was also transported to the Sullivan County Sheriff's Office and interviewed. Oralia CORTES ROSALES was advised of her Miranda Rights, and she signed a waiver of rights form. Oralia identified the third seized phone (Not listed in Attachment A and not seeking to Search phone at this time) as belonging to her. During the interview, Oralia stated she does not know where the money came from inside of the residence and that she is not allowed in certain rooms of the house without permission from Ambrosio CORTES ROSALES. Oralia also denied having any knowledge of any of the drugs found inside of the residence.

38.     Oralia was shown photographs of cocaine that were obtained from Ambrosio CORTES ROSALES' Snapchat account. (Described in Original Affidavit.) Oralia identified

14

furniture, blankets, and rugs depicted in the photographs with the cocaine that belonged to Oralia and Ambrosio CORTES ROSALES.

39.     Additionally, as stated in detail in the Original Search Warrant Affidavit, and restated above, the confidential informant confirmed that Ambrosio CORTES ROSALES used a cellular phone to arrange drug transactions.

40.     As of the date of this application, the Cellular Phones listed on Attachment A have not yet been searched.

41.     Based solely upon the probable cause set forth in the Original Search Warrant Affidavit and the additional facts listed in this affidavit, I have (and had) probable cause to believe that the Cellular Phones contain telephone records indicating telephone communications to coconspirators, drug customers and drug suppliers; address books, telephone books, computerized records and papers reflecting names, addresses and telephone numbers of drug customers and suppliers; cellular phones and electronic devices used to facilitate the distribution of controlled substances. (Original Attachment B)

42.     The Cellular Phones have been stored in a manner in which their contents are, to the extent material to this investigation, in substantially the same state as they were when the Cellular Phones first came into my possession.

43.     Probable cause to search the Cellular Phones for the information set forth in paragraph 41 of this affidavit exists in the Original Search Warrant Affidavit and is restated above for reference.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

44.     Based on my knowledge, training, and experience, I know that Cellular Phones are electronic devices that can store information for long periods of time. Similarly,

15

things that have been viewed via the Internet are typically stored for some period of time on the devices. This information can sometimes be recovered with forensics tools.

45.     *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Cellular Phones were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the devices because:

      a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

      b.  Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

      c.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

      d.  The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on

16

the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

46. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Cellular Phones consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, which might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

47. *Manner of execution.* Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

17

## CONCLUSION

48.     Based upon the foregoing, and in no way limiting the lawful effect of the Original Search Warrant or its supporting documents, I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Cellular Phones described in Attachment A to seek the items described in Attachment B.

49.     The submission of this additional search warrant does not constitute an acknowledgment that the Original Search Warrant and its supporting documents, including, without limitation, the Original Attachment B, do not already provide lawful authority to search for the records set forth on Attachment B.

S/ John Bulla

John Bulla
Homeland Security Investigations
Special Agent

Subscribed and sworn to me by telephone on June 22, 2023.

CYNTHIA RICHARDSON WYRICK
United States Magistrate Judge

6

## ATTACHMENT B

1. All records and or information on the Cellular Phones described in Attachment A that relate to violations of 21 U.S.C. §§ 846 and 841(a)(1).

    a. lists of customers and related identifying information;

    b. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

    c. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

    d. graphic images or movie files associated with weapons and/or drug trafficking.

    e. any information of scheduled travel;

    f. all bank records, checks, credit card bills, account information, and other financial records.

2. Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

## ATTACHMENT A

The following property, currently in evidence, is to be searched:

1) Samsung Model SM-S134DL(GP) with IMEI 351347078419744



2) Apple iPhone in a Pelican Case (specific identifiable information is not obtainable without conducing a search of the device)



# ATTACHMENT B

1.     All records and or information on the Cellular Phones described in Attachment A that relate to violations of 21 U.S.C. §§ 846 and 841(a)(1).

    a.  lists of customers and related identifying information;

    b.  types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

    c.  any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

    d.  graphic images or movie files associated with weapons and/or drug trafficking.

    e.  any information of scheduled travel;

    f.  all bank records, checks, credit card bills, account information, and other financial records.

2.     Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3.     As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.